UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LENA J. HINE,<br><br>              Plaintiff,<br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration,<br><br>              Defendant. | No.  EDCV 07-1681 CW<br><br>DECISION AND ORDER |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of disability benefits.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

### I.  BACKGROUND

Plaintiff Lena J. Hine was born on March 19, 1985, and was twenty-two years old years old at the time of her latest administrative hearing. [Administrative Record ("AR") 61, 424.]  She has a high school education with special education and no past

relevant work experience. [AR 216.]  Plaintiff alleges disability on the basis of mental retardation, attention deficit disorder and learning disabilities. [AR 65.]

## II.  **PROCEEDINGS**

Plaintiff applied for supplemental security income ("SSI") on October 7, 2004, alleging disability since March 19, 1985. [AR 61.] After the application was denied initially and upon reconsideration, plaintiff requested an administrative hearing, which was held on December 7, 2005, before Administrative Law Judge ("ALJ") Helen Hesse. [AR 187.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff, medical expert Joseph Malancharuvil, third party witness Elizabeth Jane Hine, and vocational expert Stephen Berry. [AR 188.]  The ALJ denied benefits in a decision dated December 29, 2005. [AR 10-14.]  When the Appeals Council denied review on February 22, 2006, the ALJ's decision became the Commissioner's final decision. [AR 3.]

Plaintiff filed a complaint in the district court on March 15, 2006 (Case No. EDCV 06-269 CW).  On October 24, 2006, the matter was remanded pursuant to a stipulation between the parties.  Specifically, the parties agreed that the Commissioner would (1) obtain additional evidence from the treating physicians to clarify the severity of plaintiff's mental impairment; (2) obtain a consultative psychological examination; (3) further consider the opinion of state agency physician Dr. Williams; (4) further consider all medical source opinions of record; and (5) further consider the severity of plaintiff's mental impairment.  On July 23, 2007, a supplemental administrative hearing was held before ALJ Hesse. [AR 424.]  Plaintiff appeared with counsel, and testimony was taken from medical expert

Craig Rath and vocational expert Stephen Berry. [AR 425.] The ALJ denied benefits in a decision dated October 19, 2007. [AR 207-17.]

The instant complaint was lodged on December 26, 2007, and filed on January 8, 2008. On August 7, 2008, defendant filed an answer and plaintiff's Administrative Record ("AR"). On October 23, 2008, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole,

"weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## IV.   DISCUSSION

### A.   THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or

1  "not disabled" at any step, there is no need to complete further
2  steps. <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. § 404.1520.
3      Claimants have the burden of proof at steps one through four,
4  subject to the presumption that Social Security hearings are non-
5  adversarial, and to the Commissioner's affirmative duty to assist
6  claimants in fully developing the record even if they are represented
7  by counsel. <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at
8  1288. If this burden is met, a <u>prima facie</u> case of disability is
9  made, and the burden shifts to the Commissioner (at step five) to
10 prove that, considering residual functional capacity ("RFC")[1], age,
11 education, and work experience, a claimant can perform other work
12 which is available in significant numbers. <u>Tackett</u>, 180 F.3d at 1098,
13 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

    **B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

15     Here, the ALJ found that plaintiff had never engaged in
16 substantial gainful activity (step one); that plaintiff had "severe"
17 impairments, namely organic brain syndrome not otherwise specified
18 with static encephalopathy and specific learning disabilities (step
19 two); and that plaintiff did not have an impairment or combination of
20 impairments that met or equaled a "listing" (step three). [AR 209.]
21 Plaintiff was found to have an RFC for a full range of work at all
22 exertional levels "except that the claimant is limited to simple

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

repetitive tasks at a moderate pace in a work environment not requiring hypervigilance or to be in charge of the safety operations of others, with no intense interpersonal interactions or the supervision of others." [AR 211.]  Plaintiff had no past relevant work (step four). [AR 216.]  The vocational expert testified that a person with plaintiff's RFC could perform work existing in significant numbers, such as bagger, laundry worker II and assembler (step five). [AR 216.]  Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [AR 217.]

**C. ISSUES IN DISPUTE**

The parties' Joint Stipulation sets out the following disputed issues:

1. Whether the ALJ properly considered the opinion of a treating physician;
2. Whether the ALJ properly developed the record regarding plaintiff's IQ tests and mild mental retardation;
3. Whether the Alj properly held that plaintiff can perform work in the national economy; and
4. Whether the ALJ posed a complete hypothetical question to the vocational expert.

[JS 3.]

**D. ISSUES ONE, TWO and FOUR: RETARDATION**

In 2004, while she was a part time student at Riverside City College, plaintiff was seen by Dr. Chris Bovetas. [AR 148-52.] In October 2004, Dr. Bovetas wrote a note stating, "This patient has ADD and mild mental retardation making it necessary to take less than a full time load but still be a full time student." [AR 150.]  In the latest administrative decision, the ALJ did not mention Dr. Bovetas'

note but found that there was substantial evidence that, based on independent psychological evaluations, plaintiff was not disabled based on her intellectual capacity and that she functioned "in at worst, the low average range." [AR 214.]

Plaintiff argues in Issue One that the ALJ's failure to discuss or mention Dr. Bovetas' opinion was reversible error. [JS 4.] In Issue Two, plaintiff argues that the ALJ should have developed the record to obtain the IQ testing results that supported Dr. Bovetas' finding of mild mental retardation. [JS 10.] In Issue Four, plaintiff argues that the hypothetical questions asked to the VE improperly failed to include the limitations bearing on plaintiff's mild mental retardation. [JS 17.] As discussed below, none of these issues has merit.

The ALJ did not err in failing to mention Dr. Bovetas' brief note because it was not significant or probative as to the issue of disability. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). Dr. Bovetas' statement that plaintiff has ADD and mild mental retardation is not inconsistent with the ALJ's finding that plaintiff has organic brain syndrome and learning disorders that impose non-exertional limitations in her ability to work; to the extent that Dr. Bovetas' opinion is read as suggesting that these conditions are disabling, it is not supported by the record and was refuted by three rounds of psychological testing that placed plaintiff, at worst, in the low average range of intellectual functioning.[2] Id. (finding ALJ

---

[2] Under the Commissioner's regulations, in pertinent part, one way to establish disability based on mental retardation is a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1,

7

entitled to ignore treating opinion of disability that was controverted by substantial evidence).  Moreover, such an opinion is completely unsupported by any clinical evidence or Dr. Bovetas' brief treatment notes.  Plaintiff claims that the ALJ should have developed the record further to determine whether any IQ testing was conducted to support an opinion that plaintiff is disabled by virtue of mental retardation, but there is nothing to suggest that Dr. Bovetas had such testing conducted.  The record does contain IQ test results from three other medical sources – one of which was conducted at almost the same time that Dr. Bovetas gave his statement – that refute any suggestion that plaintiff is mentally retarded in the context of Social Security disability.[3]  Moreover, plaintiff shares in the burden of ensuring the adequacy of the record, and there is no indication that plaintiff's counsel made any effort to obtain this evidence.  See 20 C.F.R. §§ 416.912(a)&(c), 416.916, 416.1435.  Accordingly, under these circumstances, Issues One, Two and Four are without merit.

---

Section 12.05(C).  In November 2004, plaintiff took a Wechsler Adult Intelligence Scale test - Third Edition ("WAIS-III") and received a verbal IQ score of 77, a performance IQ score of 79, and a full scale IQ score of 76. [AR 144.]  In August 2006, plaintiff took the WAIS-III again and received a verbal IQ score of 82, a performance IQ score of 100, and a full scale IQ score of 89. [AR 351-52.] In May 2007, plaintiff took the WAIS-III again and received a verbal IQ score of 81, a performance IQ score of 102, and a full scale IQ score of 89. [AR 394.]  Moreover, the record does not indicate that plaintiff has, pursuant to the regulation, a physical or mental impairment imposing an additional and significant work-related limitation of function.

[3]  In addition, the ALJ discussed, in both decisions, the opinions of multiple medical sources who stated that plaintiff would not be precluded from work despite her intellectual limitations. [See AR 145 (opinion of Dr. Robin Rhodes Campbell), AR 193-94 (testimony of medical expert Joseph Malancharuvil), AR 396 (opinion of Dr. Jeannette Townsend), AR 167-69 (opinion of state agency physician Donald Williams), AR 430-34 (testimony of medical expert Craig Rath).]

**E.  ISSUE THREE: WORK IN THE NATIONAL ECONOMY**

As noted above, the ALJ found that plaintiff had an RFC for work at all exertional levels "except that the claimant is limited to simple repetitive tasks at a moderate pace in a work environment not requiring hypervigilance or to be in charge of the safety operations of others, with no intense interpersonal interactions or the supervision of others."  The ALJ posed a hypothetical question containing these limitations to the VE, who testified that plaintiff could perform work existing in significant numbers in the national economy, such as bagger, laundry worker II and assembler. [AR 436.] Plaintiff contends that this finding is not supported by substantial evidence because these jobs, as described in the Dictionary of Occupational Titles ("DOT"), are inconsistent with plaintiff's non-exertional limitations. [JS 13-14.]  Specifically, plaintiff contends that each of these jobs requires a "Reasoning Level" of 2, which is described as "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations"; this conflicts with plaintiff's restriction to simple, repetitive work, as well as her moderate limitation in her ability to understand, remember and carry out detailed instructions.[4]

However, several courts have found Level 2 reasoning to be consistent with the ability to do simple, repetitive work tasks. See Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005) (finding limitation to simple and repetitive tasks to be closer to Level 2 reasoning); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th

---

[4]  Dr. Williams opined that plaintiff had this limitation after reviewing her medical records. [AR 214.]

9

Cir. 2005)(same); <u>Flaherty v. Halter</u>, 182 F. Supp. 2d 824, 850-51 (D. Minn. 2001)(finding no conflict between Level 2 reasoning and work involving simple, routine, repetitive, concrete, and tangible tasks); <u>see also</u> <u>Riggs v. Astrue</u>, 2008 WL 1927337 at *16 (W.D. Wash. 2008) (finding limitation to understanding, remembering and carrying out simple instructions and to making simple decisions to be consistent with the level 2 reasoning requirement of the jobs found at step five); <u>Salazar v. Astrue</u>, 2008 WL 4370056 at *7 (C.D. Cal. 2008) (rejecting argument that limitation to simple, repetitive tasks is inconsistent with level 2 reasoning ability); <u>Tudino v. Barnhart</u>, 2008 WL 4161443 at *10 (S.D. Cal. 2008)("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks."). Where there is a finding, as in this case, that a claimant can perform simple tasks with "some element of repetitiveness to them," then Level 1 on the DOT scale requires slightly less than this level of reasoning.[5] <u>Meissl</u>, 403 F. Supp. 2d at 984. Moreover, although Level 2 reasoning references an ability to follow "detailed" instructions, it qualifies and "downplay[s] the rigorousness of those instructions by labeling them as 'uninvolved.'" <u>Id.</u>; <u>Flaherty</u>, 182 F. Supp. at 850. Accordingly, the DOT's use of the term "detailed" in describing Level 2 reasoning does not render it inconsistent with a limitation to simple, repetitive tasks.

---

[5] Level 1 reasoning requires that the worker be able to "[a]pply commonsense understanding to carry out simple one- or two- step instructions" in "standardized situations with occasional or no variables." It is the "lowest rung on the developmental scale" and requires "only the slightest bit of rote reasoning." <u>Meissl</u>, 403 F. Supp. 2d at 984.

**V.   ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **AFFIRMED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED:   November 3, 2008

```
             _____/S/_____
                       CARLA M. WOEHRLE
                  United States Magistrate Judge
```